THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* EUGENE W. DURKEE, Defendant.

(Supreme Court, Albany Special Term, October, 1917.)

Penalties — action to recover — pleading — labels — Agricultural Law, § 201.

> The manufacturer of ''Durkee's Salad Dressing and Meat Sauce'' which is not an imitation nor offered for sale under the distinctive name of another article, and which contains no unwholesome added ingredients, is not required to disclose his trade formula in order that freedom may be secured from adulteration or imitation, and the complaint in an action against him to recover a penalty for an alleged violation of section 201 of the Agricultural Law (as amd. by Laws of 1914, chap. 494), because of his failure to make a statement on the label used on such product as to the ingredients thereof, will be dismissed, with costs.

ACTION to recover a penalty.

Merton E. Lewis, Attorney-General (Charles M. Stern, Deputy Attorney-General, of counsel), for plaintiff.

George L. Flanders, for Commissioner of Agriculture.

Breed, Abbott & Morgan (Sumner Ford, of counsel), for defendant.

RUDD, J. The issues in this action were tried before the court without a jury.

The action is brought to recover a penalty, the plaintiff alleging a violation of the Agricultural Law of the state (as amd. by Laws of 1914, chap. 494).

The violation alleged is because of the failure of

defendant to make a statement on the label used on defendant's product as to the ingredients thereof.

There is no particular dispute of fact.

The important and controlling facts have been by the parties stipulated and are presented to the court that the question may be fairly determined as to whether the defendant is guilty of the alleged violation of the law.

The defendant is the manufacturer of what is known and for many years has been sold as " Durkee's Salad Dressing and Meat Sauce."

This product was first made according to a secret formula by the defendant's father over fifty years ago. It has been made in the same way and for over thirty years has been sold under the same label. For fourteen of these years the statute which the defendant is alleged to have violated has been in force.

The formula and the product are commercially valuable because of the reputation which the product has with the purchasing public. The product is admitted to be wholesome and not injurious to public health, and it contains no chemical, preservative or artificial coloring matter or unwholesome or inferior ingredient of any kind.

The business of the defendant is that of importing, exporting, manufacturing and selling spices, mustard, sauces, extracts and similar products.

An analysis by a chemist in the employ of the department of agriculture shows that the salad dressing contains sodium chloride, acetic acid and mustard, that sodium chloride indicates the presence of salt, acetic acid indicates the presence of vinegar, and salt, vinegar and mustard are the ingredients of salad dressing. It also contains other ingredients.

The commissioner of agriculture contends that section 201 of the Agricultural Law requires a statement

to be set forth upon the label of all food products which are compounds, mixtures or blends, of the ingredients, and that failing in such statement the product is adulterated and misbranded, and the law violated.

Section 201 of the Agricultural Law defines adulterated or misbranded food. There are in the section six separate definitions of the meaning of adulterated food. There are three subdivisions specifying what is deemed the misbranding of an article of food.

The food product here in question made by the defendant, known as "Durkee's Salad Dressing and Meat Sauce," does not come under any one of the six subdivisions of the section relating to an article of food which shall be deemed to be adulterated, although the commissioner of agriculture contends to the contrary. Neither does the defendant's product come under the 1st or 2d subdivision of the article relating to the misbranding of an article of food.

The commissioner of agriculture in the brief submitted on behalf of the people contends that Durkee's Salad Dressing consists of "mustard to which has been added acetic acid, a well-known poisonous ingredient, and sodium chloride, and is sold upon the market without disclosing to the public the nature of the product," and because the product is mustard to which has been added sodium chloride and acetic acid, which lower and injuriously affect the quality or strength of the mustard as mustard, that therefore the product is an adulterated product within the meaning of subdivision 1 of section 201 of the Agricultural Law.

This contention cannot be sustained. It nowhere appears in the papers that the product is mustard, and that because acetic acid is one of the ingredients that that means that it is adulterated and misbranded, and it is not true by the stipulation and agreement

entered into between the parties to this action that acetic acid as such, or what is known commercially as acetic acid, is contained in the product. It certainly does not appear that " acetic acid, a well-known poisonous ingredient," is contained in the product.

It is agreed between the parties hereto, as heretofore stated, that acetic acid in the product indicates the presence of vinegar, and that sodium chloride indicates the presence of salt.

According to the Agricultural Law all genuine vinegar must contain acetic acid, and it is admitted as one of the facts by the parties that this product contains no unwholesome or inferior ingredients of any kind. That fact is established by the admission in the reply of the plaintiff, in admitting an allegation of the defendant in the answer to that effect.

The commissioner of agriculture states in his brief that acetic acid is admittedly a poisonous ingredient which may affect the product so far as to render it injurious to the health of the person consuming it, if such acetic acid is not diluted.

This contention is not at all sustained; in fact, the people have admitted facts which indicate, as above stated, that such is not the fact.

The commissioner of agriculture states, in his brief, that the objections to the sale of this product are not placed upon the ground of misbranding or falsely branding, but upon the ground that the product is an adulterated product and thus its sale is forbidden, unless the product is one that comes within the exceptions of the statute, which would entitle the product to be sold by virtue of the protection of such exception.

The exceptions to which the commissioner has alluded are two, and follow subdivision 3 of the definitions in section 201 of the Agricultural Law relating to misbranding. The latter part of subdivision 3 reads

as follows: " provided, that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases:

" *First.* In the case of mixtures or compounds which may be now or from time to time hereafter known as articles of food, under their own distinctive names and not included in definition first or third of misbranded articles of food in this section."

Definition *first* above referred to relates to an article in imitation of or offered for sale under the distinctive name of another article.

That does not apply to Durkee's Salad Dressing, whch is not an imitation, nor is it offered for sale under the distinctive name of another article.

Subdivision three, just above referred to, relates to a package which shall bear a statement regarding the ingredients or the substances contained therein, which statement shall be false or misleading in any particular, or if the same is falsely branded as to the state or territory in which it is manufactured or produced, or if it shall be contained in, or served in or from any bottle or receptacle falsely marked, labeled or branded, as to the name of the person.

That definition does not condemn Durkee's Salad Dressing.

Thus the first exception under subdivision 3 is not applicable.

As to the second exception under definition 3, as to misbranding articles, let us see what this is. It reads:

" *Second.* In the case of articles labeled, branded or tagged so as to plainly indicate that they are mixtures, compounds, combinations, imitations or blends; provided, that the same shall be labeled, branded or tagged so as to show the character and constituents thereof."

The label on Durkee's Salad Dressing shows that it is a mixture but it does not show the constituents thereof.

The exception goes further and provides as follows: '' that nothing in this article shall be construed as requiring or compelling proprietors or manufacturers of proprietary foods which contain no unwholesome added ingredients to disclose their trade formulas, except in so far as the provisions of this article may require to secure freedom from adulteration or imitation.''

For clearness sake let us, at the risk of repetition, state the respective claims. The claim of the commissioner of agriculture apparently is that the provisions in the latter part of the third definition of misbranding articles require a statement of the constituents to be placed upon the label of all food products which are mixtures, blends or compounds of different ingredients, and that without such a statement the product under the law is adulterated and misbranded.

The defendant's claim is that the latter clause of the third definition of misbranding articles applies only to cases where the product is adulterated or misbranded, in one of the ways enumerated above in the first, second or third definition of misbranding articles under section 201, and because this product is not adulterated or misbranded in any of the ways specified the requirement of the second exception under subdivision 3 does not apply; and, secondly, the defendant claims that the article being sold under its own distinctive name it is not necessary that its ingredients be stated upon the label.

The statute clearly reads: '' provided, that an article of food which does not contain any added poisonous or deleterious ingredients shall not be

deemed to be adulterated or misbranded in the following cases: ''

The first case is that of mixtures or compounds which are sold under their own distinctive names and not included in the first or third definitions of misbranding articles of food.

Notwithstanding the contention of the defendant it does not seem clear that Durkee's Salad Dressing is sold under its own distinctive name, and therefore the first exception just quoted does not apply.

In the second exception it is provided '' that nothing in this article shall be construed as requiring or compelling proprietors or manufacturers of proprietary foods which contain no unwholesome added ingredients to disclose their trade formulas, except in so far as the provisions of this article may require to secure freedom from adulteration or imitation.''

In Durkee's Salad Dressing and Meat Sauce, from the facts which appear as admitted here, the product contains no unwholesome added ingredients, and therefore the manufacturer thereof is not required to disclose his trade formula, in order that freedom may be secured from adulteration or imitation.

There is no adulteration or imitation, and it is not necessary to secure freedom therefrom, and the trade formula should not therefore be disclosed.

The Special Term has passed upon this question in *People* v. *Henderson,* 74 Misc. Rep. 577, in a similar action brought by the commissioner of agriculture concerning a salad dressing known as '' O'Donohue's Fifth Avenue Salad Dressing.'' Mr. Justice Tompkins said: '' that the ingredients are only required to be given where the article sold is an imitation or adulteration of some standard article of food, and that the burden is upon the people to show that the article sold is an imitation or a deleterious adulteration of some

article of food. There is no proof here that the article sold was an imitation, or that it was injurious to the public health. It was sold as a salad dressing; and, to bring it within the law requiring a statement of its constituent parts, it seems to me there should be proof showing that there is some standard merchantable salad dressing and that the article sold is not that article. So far as the proof shows, it may itself be the standard salad dressing. The object of the law is to prevent deception and to forbid the sale of inferior or deleterious products without giving the public notice of just what is being sold. There is here no evidence of either. True, it does appear that the bottle sold by the defendant was a mixture of several ingredients; but that is not prohibited by law, unless it is sold as an imitation of some commodity, or is injurious to the public health and calculated to deceive the public. I do not see how the people's contention here can be upheld without requiring every make of salad dressing to be labeled with the ingredients thereof; because there is no proof of a standard salad dressing and there is no evidence that any ingredient of this salad dressing is unwholesome, or foreign to true salad dressing.''

The federal statute defines in what manner food shall be deemed adulterated and misbranded, and that clause has been construed by the federal court as not being an affirmative requirement but as a clause excepting articles which comply therewith from the definition of adulterated and misbranding. *United States* v. *68 Cases Syrup,* 172 Fed. Repr. 781; *United States* v. *779 Cases Molasses,* 174 id. 325.

In 1907 the attorney-general of the state, in an opinion rendered to the commissioner of agriculture, held that a statement of the ingredients was not required upon the article here in question.

Attorney-General Mayer in construing the second exception in section 201 of the Agricultural Law, in an opinion addressed to the commissioner of agriculture, said:

" The exception ' Second ' relating to articles labeled, etc., so as to plainly indicate that they are mixtures, etc., applies, in my opinion, to mixtures, compounds, combinations, imitations or blends which have not a distinctive name in the sense of an arbitrary name, or which from their name, label, brand or tag, indicate that the constituent element of the mixture, compound, combination, imitation or blend is some known substance.

" The object of this portion of the statute was that where a person is buying a mixture, compound, etc., represented by label, brand or tag to be composed in part of a known food, that such person should be informed as to the constituent elements of such mixture, compound, etc."

The opinions expressed by the attorneys-general seem to have been the construction placed upon this particular portion of section 201 of the Agricultural Law for many years.

These decisions are not controlling, necessarily, but it evidently has been the policy of the state, and while we all should recognize and welcome the constant efforts by legislation and otherwise to protect the purchasers of food products from deleterious combinations, and from all imitations and certainly from all adulterations where the purchaser is supposed to purchase an adulterated article, still to change the policy to the extent that it would change it with reference to this particular product, under the admitted facts in this case, would work a hardship unjustifiable in its character, it seems to this court.

A product so well and so favorably known, concern-

Surrogate's Court, Madison County, October, 1917. [Vol. 101.

ing which the department of agriculture and the attorney-general representing that department frankly admit is a wholesome article of food, which has been sold, as before stated, under the same label for thirty years, which has been made and sold in the markets of our state and throughout the country for over fifty years, and which has been on the market during the life of this portion of the Agricultural Law for over fourteen years without containing upon the label a statement of its ingredients, has, it seems to this court, justified the wisdom and correctness of the construction of those portions of the statute to which our attention has been directed, concerning which it seems that there has been on the part of the defendant no violation for which he should be held liable for the penalty fixed by statute. An order may be entered dismissing the complaint of the plaintiff, with costs.

Ordered accordingly.